UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ERIC KENNETH COLLINS                              CIVIL ACTION

VERSUS                                                                          NO. 17-49-RLB[1]

COMMISSIONER OF SOCIAL SECURITY

## RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

Eric K. Collins ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Ruling.

I.      PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits and supplemental security income (Tr. 131-140) on May 20, 2014, alleging that he became disabled on November 9, 2009 because of a disabling condition, namely bad hip, bad knee, bad back, hand, legs and feet. (Tr. 132). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 6), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

first held an administrative hearing (Tr. 33-55) before issuing a partially unfavorable decision on July 26, 2015. (Tr. 17-34). Plaintiff's request for review of the ALJ's decision (Tr. 13-14) was denied by the Appeals Council on December 28, 2016. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1

(Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2013.

2. Plaintiff had not engaged in substantial gainful activity since November 9, 2009.

3. From November 9, 2009 through February 13, 2014, Plaintiff had the following severe impairments: reconstructive surgery of weight bearing joint and facture of lower lib status-post ORIF of left lateral plateau fracture.

4. From November 9, 2009 through February 13, 2014, Plaintiff did not meet or medically equal a Listing.

5. From November 9, 2009 through February 13, 2014, Plaintiff retained the RFC to perform light work, except he could lift/carry 10 lbs. frequently, 20 lbs. occasionally, sit/stand/walk 2 hours in an 8-hour work day with unlimited push/pull, frequently balance, stoop, and climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, and would miss at least 3 days per month and require use of a cane to assist with ambulation.

6. From November 9, 2009 through February 13, 2014, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was a younger individual as of the disability onset date.

8. Plaintiff had at least a high school education and is able to communicate in English.

4

9.  Plaintiff's acquired job skills did not transfer to other occupations within the residual functional capacity.

10. From November 9, 2009 through February 13, 2014, and considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

11. Plaintiff was disabled from November 9, 2009 through February 13, 2014.

As is the case here, if the claimant is found disabled at any point in the above process, the Commissioner must then determine if his or her disability continues through the date of the ALJ's decision. A cessation of disability benefits requires a finding of medical improvement. A finding of medical improvement requires consideration of whether the claimant: (1) is currently engaging in substantial gainful activity; (2) has an impairment or combination of impairments that meets or medically equals one listed in the regulations; (3) has experienced medical improvement; (4) has experienced medical improvement that is related to the ability to work; (5) has experienced medical improvement, but an exception to the medical improvement applies; (6) has current impairments that when considered in combination are severe; (7) can perform past relevant work; and (8) can perform other work that exists in the national economy. 20 C.F.R. § 404.1594(f).

For the period after February 13, 2014, the ALJ made the following determinations about Plaintiff's ability to engage in substantial gainful activity:

12. Plaintiff had not developed any new impairment or impairments since February 14, 2014, the date his disability such that his severe impairments are the same as those present from November 9, 2009 through February 13, 2014.

13. Beginning February 14, 2014, Plaintiff did not meet or medically equal a Listing.

14. Medical improvement occurred as of February 14, 2014, the date Plaintiff's disability ended.

15. The medical improvement was related to the ability to work because there was an increase in Plaintiff's residual functional capacity.

16. Beginning February 14, 2014, Plaintiff retained the RFC to perform light work, except that he can lift/carry 10 lbs. frequently, 20 lbs. occasionally, sit/stand/walk 6 hours in an 8-hour workday with unlimited push/pull, can frequently balance, stoop and climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, kneel, crouch, and crawl secondary to residual pain in his left knee.

17. Plaintiff was unable to perform any past relevant work.

18. Since February 14, 2014, Plaintiff's age category change to an individual closely approaching advanced age.

19. Plaintiff's education level has not changed.

20. Beginning February 14, 2014, transferability of job skills was not material to the determination of disability because Plaintiff was not disabled, whether or not he had transferable job skills.

21. Beginning February 14, 2014, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

22. Plaintiff's disability ended February 14, 2014.

23. Transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules support a finding that Plaintiff is not disabled, whether or not she has transferable job skills.

24. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

25. Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff asserts four arguments in support of his suggestion that the ALJ's decision should be reversed. First, Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff had experienced medical improvement rendering him not disabled as of February 14, 2014. (R. Doc. 1 at 4-11). Second, Plaintiff argues that the ALJ erred in concluding

that Plaintiff did not develop any new impairments since February 14, 2014. (R. Doc. 11 at 11-12). Third, Plaintiff suggests that the ALJ did not apply the correct standard in making his credibility determination such that it was not based on substantial evidence. (R. Doc. 11 at 12-14). Lastly, Plaintiff argues that the ALJ's failure to incorporate Plaintiff's use of a cane in his second RFC was not supported by substantial evidence. (R. Doc. 11 at 14-16).

### A.  Medical Improvement

"Medical improvement" is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Such a determination "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s) and *must be related to the ability of the claimant to perform work activities*." 20 C.F.R. §§ 404.1594(b)(1), 404.1594(b)(3) (emphasis added). Benefits cannot be terminated without substantial evidence of improvement to the point of no disability. The Commissioner follows an eight-step process, set forth above, for determining medical improvement and termination of disability as a result thereof. *See* 20 C.F.R. § 404.1594(f). Significantly, "[t]he ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) present at the time of the most favorable medical decision finding the claimant disabled. *See* 20 C.F.R. § 404.1594(b)(7). Then, in order to determine that medical improvement is related to the ability to work, the ALJ must reassess a claimant's residual functional capacity based on the current severity of the impairment(s) present at claimant's last favorable medical decision." *Ramirez v. Colvin*, 2014 WL 819464, at *7 (W.D. Tex. Feb. 28, 2014).

Here, the ALJ found that Plaintiff had experienced a medical improvement as of February 14, 2014 based on x-ray imaging that consisted of the following findings:

> AP, lateral, and oblique views of the left knee reveal the patient be status post previous left knee replacement. The femoral and tibial components of the prosthetic device appear to be well seated and in good alignment. No fracture is seen. There is no evidence to suggest loosening of the prosthetic device. Bone is well mineralized. No soft tissue mass or foreign body is seen. There is a smell well corticalized 7 x 4 mm bone density anterior to the knee above the patella on the lateral projection which is not readily apparent on the frontal views. Cannot exclude possible small calcified loose body in suprapatellar bursa.

(Tr. 375). In his decision, the ALJ relies on there being no acute fracture noted, the appearance of the prosthetic device to be well seated and in good alignment without evidence of loosening, and well-mineralized bone with no soft tissue mass or foreign body. (Tr. 27). The ALJ does not address the "possible small calcified loose body in suprapatellar bursa." (Tr. 27, 375).

Plaintiff argues that the report relied on by the ALJ to conclude Plaintiff had experienced a medical improvement does not support a finding that Plaintiff's functional abilities improved. (R. Doc. 11 at 5-6). The Commissioner responds that substantial evidence supports the ALJ's second RFC and, accordingly, the ALJ's conclusion that Plaintiff experienced a medical improvement as of February 14, 2014. (R. Doc. 15 at 5-8). The Court agrees with Plaintiff insofar as the x-ray report does not address whether Plaintiff's functional abilities improved. However, the analysis does not end there. The ALJ went on to assess a second RFC, thereby addressing Plaintiff's functional limitations from the date of the x-ray report forward, so the question becomes whether substantial evidence supports the ALJ's second RFC.

Plaintiff suggests that the ALJ's second RFC was not supported by substantial evidence such that the required comparison of RFCs for purposes of assessing medical improvement was irreparably tainted. (R. Doc. 11 at 7-11). In support of this argument, Plaintiff posits that the ALJ provided no basis for the changes between the first and second RFCs, including "no affirmative

8

record evidence that these limitations had somehow disappeared on or after February 14, 2014. (R. Doc. 11 at 8).

"Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). This standard would necessarily include a burden on the government to prove the change (i.e., the improvement) from an RFC assessed for a period in which a claimant is found disabled, and a second RFC assessed for a period in which is a claimant's benefits have been terminated. Here, the ALJ suggests, in support of his second RFC, that (1) "there is no evidence of ongoing treatment after February 14, 2014"; (2) "the record does not contain any opinions from his treating or examining physicians indicated that the claimant is disabled or even placing restrictions/limitations on his ability to work"; and (3) "no indication that additional surgeries and/or physical therapy are required." (Tr. 27-28).

These findings are not, however, entirely accurate. At a February 13, 2014 appointment at LSU Health (the same date upon which the ALJ concluded Plaintiff had experienced medical improvement), the records note Plaintiff reported pain score of 10 in his left knee, as well as back pain and hip pain. (Tr. 379). Plaintiff was referred to rheumatology as well as pain management on the same day. (Tr. 379). Further, he was deemed eligible for a temporary tag due to a mobility impairment. (Tr. 379; Tr. 381). At his follow up with rheumatology on May 15, 2014, the records note Plaintiff reported pain score of 8/10, and that he complained of multiple join pain that started when a 17-foot hole caved in, which would be the origin of his left knee injury. (Tr. 409). At a February 26, 2015 appointment, more than a year after the x-ray report, Plaintiff was again diagnosed with back pain and joint pain. (Tr. 506). None of these records were addressed by the ALJ, though the ALJ did note that Plaintiff was diagnosed with back pain

9

and joint pain in April of 2015. (Tr. 28; Tr. 513). This evidence is in direct conflict with the ALJ's unsupported conclusion that "there is no evidence of ongoing treatment after February 14, 2014." (Tr. 27).

Furthermore, an absence of an opinion finding Plaintiff disabled or placing restrictions or limitations on his ability to work, and no indication of a need for additional surgeries and/or physical therapy are required, as suggested by the ALJ in support of his second RFC, does not correlate to a finding that Plaintiff's functional abilities had improved to a point that he was not disabled. The difference between the first RFC and the second RFC is that the ALJ found that Plaintiff could sit/stand/walk 6 hours in an eight-hour work day (up from 2 hours), he could kneel, crouch, and crawl secondary to residual pain in his left knee, and would no longer miss at least 3 days per month nor require use of a cane to assist with ambulation. *Compare* Tr. 23 *with* Tr. 27. The ALJ provides no analysis to justify this change such that there is nothing for the Court to review.

In addition to the objective medical records, Plaintiff testified that he can walk "[p]robably a block" after which he "start[s] bending and [his] hips and [his] knees hurt." (Tr. 42). He testified that he uses a back brace, a knee brace, a hand brace, and sometimes an ankle brace. (Tr. 42). He testified that he was experiencing pain the day of the hearing, June 8, 2015), and that he has not been pain free for any period of time since the 2009 accident. (Tr. 46). He testified that he uses his cane if he has to walk more than a block. (Tr. 48-49). In his June 6, 2014 Function Report, Plaintiff states that his "injuries limit [his] ability to work because [his] knee, back, feet and hips be in severn[sic] pain." (Tr. 149). The same report notes the use of a cane.[2]

---

[2] Dr. Lee's Findings of Fact and Analyses of Evidence dated July 24, 2014, also notes that "Clmt uses cane."

(Tr. 155). He further notes that he can't walk, sit, and stand long, and that his conditions affect lifting, squatting, bending, standing, walking, sitting, kneeling, and stair climbing. (Tr. 154).

Given the government's burden of proving medical improvement, and the existing evidence not addressed by the ALJ that contradicts his conclusion, the Court will reverse and remand the ALJ's decision for further proceedings consistent with this opinion.

**B.     New Impairments**

The Regulations note, with regard to determining whether a disability continues or ends, "we must show that you are able to engage in substantial gainful activity before your benefits are stopped. When doing this, we will consider all your current impairments not just that impairment(s) present at the time of the most recent favorable determination." 20 C.F.R. § 404.1594(c)(5). Plaintiff argues that the ALJ failed to consider Plaintiff's new impairments in his second RFC or from February 14, 2014 forward. (R. Doc. 11 at 11). Specifically, Plaintiff suggests the ALJ should have considered certain MRI results, a nerve conduction study, and diagnosed bilateral carpal tunnel syndrome. (R. Doc. 11 at 11). The Commissioner responds that the ALJ cited the findings in question, and implies that Plaintiff failed to show any resulting functional limitations such that any error was harmless. (R. Doc. 15 at 9).

Here, the ALJ found that Plaintiff suffered from the same severe impairments from February 14, 2014 through the date of the ALJ's decision as he had from November 9, 2009 through February 13, 2014, namely, reconstructive surgery of weight bearing joint and fracture of lower limb status-post ORIF of left lateral tibial plateau fracture. (Tr. 22-23; Tr. 26-27). The ALJ also made an explicit finding that Plaintiff "has not developed any new impairment or impairments since February 14, 2014" but does not discuss the basis of his conclusion (Tr. 26). In his second RFC finding, the ALJ noted the following:

> MRI taken of the cervical spine on March 16, 2015 revealed multilevel degenerative disc disease but with mild cord compression. Likewise, MRI of the lumbar spine revealed severe central stenosis at L4-L5 level and at L5 vertebral level; with only mild central stenosis at L3-4 level; and disc space narrowing. Degenerative disease at L5-S1 level with broad-based posterior annular disc bulge was also present at this level but resulting in no nerve root displacement or thecal sac compression (*Id. at* 6-7).

(Tr. 28). The ALJ acknowledged the existence of some, but not all, of Plaintiff's new impairments. At his February 13, 2014 appointment with LSU Health, Plaintiff was diagnosed with back pain, hip pain, joint pain, and lipidemia. (Tr. 379, 386). He was referred to rheumatology and pain management. (Tr. 379). At his May 15, 2014 appointment with the rheumatology department, Plaintiff reported multiple joint pain and was diagnosed with degenerative disc disease, generalized osteoarthritis, and was noted to have a positive ANA. (Tr. 409, 410). Records from a May 20, 2014 visit at Our Lady of the Lake indicate Plaintiff was advised to purchase and use a wrist brace at night. (Tr. 421). These conditions continued to be diagnosed a year later, in February of 2015. (Tr. 506). In January 2015, Plaintiff was seen for numbness and was diagnosed with right cervical radiculopathy and carpal tunnel syndrome on both sides. (Tr. 518).

The most recent record in evidence, from an April 27, 2015 appointment at LSU Health, shows Plaintiff was diagnosed with GERD, unspecified lipoid metabolism disorder, elevated ANA, back pain, joint pain, tremor, and right carpal tunnel syndrome. (Tr. 513). Those records indicate the Plaintiff underwent a nerve conduction study in January 2015. (Tr. 516). Plaintiff also discusses this in his testimony at the administrative hearing. Plaintiff's attorney noted that Plaintiff "appear[ed] to be shake some" and asked whether it was a physical problem. Plaintiff responded that he has tremors and that his providers were assessing what was going on. (Tr. 49). He underwent a brain scan, but had not yet gotten the results. (Tr. 50).

While somewhat acknowledging the presence of these diagnoses, the ALJ does not include them in his list of severe impairments, nor does he discuss the basis of his conclusion that these impairments were not severe. Further, the ALJ does not address whether Plaintiff had any functional limitations attributable to these diagnoses. In failing to either include them in his list of impairments, or discuss the reason he found them non-severe,[3] the ALJ erred, especially given the requirement in 20 C.F.R. § 404.1594(c)(5) that the Administration consider all current impairments "not just that impairment(s) present at the time of the most recent favorable determination." Bare and summary conclusions are, in general, beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007).

Having determined that the ALJ erred in failing to state any reason for his adverse determination regarding Plaintiff's severe impairments, we must still determine whether this error was harmless. *See Alexander v. Astrue*, 412 Fed. App'x 719, 722 (5th Cir. 2011) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("However, when an ALJ makes a procedural error in denying disability benefits, 'we must still determine whether [the] error was harmless.'"). Based on the impairments assessed prior to the ALJ's first RFC in comparison with the ALJ's second RFC, Plaintiff apparently progressed from the ability to sit, stand, or walk two hours in an eight-hour work day with unlimited push/pull to six hours in an eight-hour work day with unlimited push/pull, from missing at least three days per month to having the ability to kneel, crouch, and crawl secondary to residual pain in the left knee, and from needing a cane to ambulate to not needing a cane for ambulation. (Tr. 23, 27). Despite a second RFC that was less restrictive than the first, which moved the Plaintiff from disabled to not disabled, coupled with

---

[3] Had the ALJ found Plaintiff's new impairments to be non-severe, and explained the reasoning behind such a conclusion, the Court may have been able to determine whether substantial evidence supported the ALJ's finding. However, without any discussion, or indication of what portions of the record the ALJ relied upon in making his decision, this finding is beyond meaningful judicial review.

13

an increase in diagnoses on or after February 13, 2014, the ALJ failed to discuss any objective medical records that would provide substantial evidence for the increased abilities.

Given the diagnoses of back pain, multiple joint pain, and complaints of hip pain, along with a positive ANA, appointments with rheumatology, and a potential diagnosis of lupus, some analysis of how these correspond to an increase in ability to stand and walk from two to six hours in an eight-hour work day, and a diminished need to use a cane for ambulation, is warranted. Additionally, given diagnoses of bilateral carpal tunnel syndrome and the presence of tremors being noted and additional testing in progress, analysis is also needed as to whether the carpal tunnel syndrome is a severe impairment and how, if at all, it affects Plaintiff's unlimited push/pull RFC assessment. Thus, the Court is unable to conclude that the ALJ's failure to find Plaintiff's new impairments severe, or at least address them and any functional limitations in his second, post-February 13, 2014 RFC analysis, was harmless. As such, the ALJ's decision is reversed and remanded on this point for further proceedings consistent therewith.

### C. ALJ's Credibility Determination

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his treating or examining sources concerning the alleged symptoms and their effects. *See* § 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide the following non-exclusive list of factors that the ALJ must consider:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). Nevertheless, the Fifth Circuit has held that the ALJ is not required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his reasons for rejecting a claimant's subjective complaints only 'when the evidence clearly favors the claimant.'" *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

Here, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible from November 9, 2009 through February 13, 2014, based upon the objective evidence." (Tr. 24). In his second RFC, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 27). The ALJ goes on to explain his findings that there was "no evidence of ongoing treatment after February 14, 2014," there were no "opinions from his treating or examining physicians indicating that the claimant is disabled or even placing restrictions/limitations on his ability to work," and there was "no indication that additional surgeries and/or physical therapy are required." (Tr. 28).

By contrast, the Plaintiff testified that his providers told him he would probably need additional surgery with his hips and other knee (Tr. 38); that he takes medication for seizures, pain, cholesterol and muscle relaxers (Tr. 40); that after walking "probably a block" he starts

15

bending and his hips and knees hurt (Tr. 42); that he uses a back brace, knee brace, ankle brace and hand brace at least on occasion or to sleep (Tr. 42); that he's in "so much pain" that he has to lay down (Tr. 44); that he has difficulty walking on rough or uneven surfaces, and climbing stairs (Tr. 45); that his pace has gotten slower since December 31, 2013 and he has pain in his left hip, left shin, and ankle (Tr. 46); that there are some days he has to just "lay there" (Tr. 47); and that he has tremors for which he has undergone a brain scan (Tr. 49-50).

There is no evidence in the record that would substantiate the ALJ's finding with regard to Plaintiff's credibility. The ALJ suggests that there was "no evidence of ongoing treatment after February 14, 2014." (Tr. 28). However, from February 13, 2014 onward, the records contain numerous instances of medical appointments. To start, there is a February 13, 2014 record of Plaintiff's appointment at LSU Health wherein he complained of back pain, hip pain, and left knee pain, and was referred to rheumatology and pain management. (Tr. 379). He had an appointment for multiple joint pain with LSU Health's rheumatology department on May 14, 2014. (Tr. 409). In February of 2015, records indicate Plaintiff had an appointment at LSU Health wherein he was diagnosed with back pain, joint pain, lipoid metabolism disorder, and elevated ANA. (Tr. 506). Plaintiff underwent a lumbar MRI in March of 2015. (Tr. 507). On April 27, 2015, Plaintiff had another appointment with LSU Health, this time being diagnosed with GERD, lipoid metabolism disorder, elevated ANA, back pain, joint pain, tremor, and right carpal tunnel syndrome. (Tr. 513). These diagnoses and records of complaints of pain substantiate Plaintiff's claim.

In support of his argument, Plaintiff points the Court to several instances in the record that weigh against the ALJ's credibility finding. First, Plaintiff notes that the ALJ "did not consider that plaintiff's treatment with pain medication continued through at least May 2015."

(R. Doc. 11 at 13). Records from Plaintiff's February 13, 2014 visit indicate a prescription for Hydromorphone. (Tr. 391). Meloxicam and Tramadol are the noted current pain medications as of April 27, 2015. (Tr. 513). As discussed more fully above, Plaintiff also notes that he continued to seek treatment for multiple joint pain after February 14, 2014. (R. Doc. 11 at 14; Tr. 379, 386, 513, 409, 506, 513). Plaintiff also correctly notes that the ALJ did not discuss Plaintiff's additional problems that were not previously existing, including severe central stenosis at C5-C6, multi-levels, and carpal tunnel syndrome. (R. Doc. 11 at 14; Tr. 510). The results of the March 16, 2015 lumbar MRI revealed mild central stenosis at the L3-L4 level, severe central stenosis at the L4-L5 level and mild osteoarthritis, and moderate disc space narrowing and degenerative disc disease with disc bulge contacting the S1 nerve roots. (Tr. 510). The ALJ makes no mention of these findings, however, all of which substantiate Plaintiff's subjective complaints of pain.

The ALJ failed to indicate what evidence, if any, contradicted Plaintiff's allegations of pain and symptoms. *Giles v. Astrue*, 433 Fed. App'x 241, 249 (5th Cir. 2011) ("Of course the ALJ's determination decision cannot simply make conclusory statements regarding credibility and must contain specific reasons for the finding on credibility, supported by the evidence in the case record…") (quotations omitted). Indeed, some of the explicit conclusory statements made by the ALJ are factually incorrect. Generally speaking, on judicial appeal, the Court does not "re-weigh the evidence" or conduct a de novo review of the ALJ's credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). And, because the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing, his or her credibility assessment is generally entitled to great deference." *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). There is nothing, however, in the Plaintiff's testimony that would indicate or justify the disparate credibility findings before and after February 14, 2014.

17

Given the precarious factual assertions that underlie the ALJ's decision with regard to Plaintiff's credibility, and the ALJ's failure to discuss specific evidence to support his conclusions, the Court has serious concerns as to the propriety of that finding. There is no evidence in the record that Plaintiff experienced a lessening of functional limitations after February 14, 2014, and indeed, the objective medical records as well as Plaintiff's testimony indicate otherwise. The ALJ failed to articulate his reasons for discounting Plaintiff's credibility, and, insofar as he did provide reasons, those reasons seem to be factually incorrect. Accordingly, the ALJ's decision is reversed on this ground, and remanded for further proceedings in accordance therewith.

### D. Plaintiff's Use of a Cane

As noted by the regulations, the "requirement to use a hand-held assistive device may also impact [the claimant's] functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R., Part 404, Subpt. P, App. 1, § 1.00(J)(4). *See also* SSR 83–10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("Many unskilled light jobs are performed primarily in one location, with the ability to stand more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects..."); SSR 96–9P, 1996 WL 374185, at *6 (July 2, 1996) (use of a cane may impact ability to perform even sedentary work).

The ALJ found, in his first RFC, that Plaintiff required the use of a cane for ambulation. (Tr. 23). The ALJ's second RFC did not contain the same required use of a cane. (Tr. 27). Plaintiff argues that the exclusion of the need for a cane in the ALJ's second RFC was not based on substantial evidence. (R. Doc. 11 at 14). The ALJ provides no indication of what portions of

18

the objective medical records provide substantial evidence for the lack of requirement of a cane in his second RFC.

The omission of the need to use a cane for ambulation in the ALJ's second RFC is necessarily a finding of medical improvement. That is to say, where the ALJ found in his first RFC that the Plaintiff required the use of a cane for ambulation, but omitted this requirement from his second RFC, the ALJ necessarily concluded Plaintiff had some improvement affecting this aspect of his RFC. The burden of proving medical improvement falls on the government. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) ("Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled.").

The ALJ has not met his burden. The ALJ's decision is devoid of any substantive discussion regarding the objective medical evidence as it pertains to Plaintiff's use of a cane for ambulation, and in particular, the ALJ fails to discuss the contrast in his findings between the first and second RFCs. The ALJ provides no justification, through reference to the record or otherwise, of how he concluded that Plaintiff no longer needed to use a cane for ambulation from February 14, 2014 forward. In fact, the medical evidence cited above in Section A, along with the Plaintiff's testimony at the administrative hearing and his statements regarding the use of a cane in his June 6, 2014 Function Report are indicative of a continued need to use a cane for ambulation. Without any discussion from the ALJ regarding the cessation of Plaintiff's need to use a cane for ambulation, there is no record for the Court to review to determine whether substantial evidence supports the ALJ's second RFC insofar as the need for a cane is concerned, nor whether the ALJ has met his burden of proving medical improvement. Accordingly, the

ALJ's decision is reversed on this point and remanded for further consideration consistent with this opinion.

V.     **CONCLUSION**

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Ruling.

Signed in Baton Rouge, Louisiana, on March 19, 2018.

                **RICHARD L. BOURGEOIS, JR.**
                **UNITED STATES MAGISTRATE JUDGE**